UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM DYKEMAN, | : | |
| | : | Civil Action No. 14-5411 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| C.O. MCGILL, et al., | : | |
| | : | |
| Defendants. | : | |

**WIGENTON**, District Judge:

Presently before the Court is Defendants motion summary judgment brought pursuant to Federal Rule of Civil Procedure 56. (ECF No. 76). Despite being provided an extension of time within which to do so, Plaintiff has failed to timely file either a response to the motion or a statement of material facts in dispute. For the following reasons, this Court will grant the motion and will enter judgment in this matter in favor of Defendants.

**I. BACKGROUND**

In his operative amended complaint (ECF 68), Plaintiff raises three claims arising out of events that occurred while he was incarcerated in Northern State Prison in June 2014. Specifically, Plaintiff contends that a corrections officer, Defendant McGill, used excessive force by striking him with a stack of papers causing him to suffer injuries to his hip and lower back, that Defendant Wasik failed to intervene to prevent or end McGill's alleged use of excessive force, and that the New Jersey Department of Corrections was negligent in training and/or supervising McGill and Wasik. (*Id.* At 1-3). Plaintiff thus seeks to raise claims for violations of his Eighth

1

Amendment rights against McGill and Wasik, and state law negligence claims against the Department.

Plaintiff described the incident in question during his deposition in this matter. According to Plaintiff, on June 6, 2014, he was passing through a security checkpoint and two young female corrections officers were examining "two oversized envelopes full of about 300 papers . . . each" that contained his legal papers. (Document 7 attached to ECF No. 76 at 3). Plaintiff asked the two women not to mix the paperwork as he had previously organized the papers. (*Id.*). In response to his request, Defendant Wasik arrived and began to ask what was going on, resulting in him "cursing" and verbally berating Plaintiff in a fashion "resemble[ing] something like . . . the beginning of a WWF [match]." (*Id.*). After about a minute of such verbal, abuse, Defendant McGill arrived and joined in "cursing and yelling at" Plaintiff. (*Id.*). McGill thereafter picked up Plaintiff's papers and "slammed it into [Plaintiff], just extending his arms." (*Id.*). By Plaintiff's estimation, McGill didn't "want to hurt" him, but "slammed" the stack of papers into him harder than intended. (*Id.*). This resulted in Plaintiff stumbling, which caused him to place weight onto a previously injured hip, which ultimately led to Plaintiff suffering continual hip and back pain. (*Id.* At 3-4). Although Plaintiff was surprised by the incident he "didn't think it was a big deal" at the time. (*Id.* At 8). During this incident, Wasik never made more than minimal contact with Plaintiff, if any. (*id.* At 7). Plaintiff described the incident as "fast occurring" and stated at his deposition that he didn't believe that Wasik could really have stopped the shove as everyone was "in shock" as to its occurrence, but instead that he believed Wasik was culpable based on his having been involved in the verbal confrontation prior to the shove with the papers. (*Id.* At 13).

2

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it

3

has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

**B. Analysis**

**1. Plaintiff's failure to timely respond**

Following the filing of Defendants' motion for summary judgment in this matter, Plaintiff requested both an extension of time within which to file a response and further discovery. (ECF No. 78). On November 15, 2018, Magistrate Judge Mannion granted Plaintiff an extension of time to respond and permitted Plaintiff to file his response on or before November 30, 2018, but denied Plaintiff's remaining requests. Plaintiff did not file a response to the motion by November 30. Instead, on December 17, 2018, this Court received from Plaintiff a late motion for an extension of time to respond to the summary judgment motion (ECF No. 81) and a request (ECF No. 80) to have this Court rule upon two previous filings Plaintiff submitted more than a year ago - a letter request that this Court reconsider Judge Mannion's denial of counsel (*see* ECF No. 43; ECF No. 53-54), and a second request for counsel to aid Plaintiff in seeking further medical examinations to support his claims (ECF No. 63). To the extent that Plaintiff, in filing these requests for counsel, sought to appeal to this Court Judge Mannion's denial of his motion for the appointment of counsel, those requests (ECF Nos. 53-54, 63) are denied for the reasons set forth by Judge Mannion in denying Plaintiff's previous request for counsel. (ECF No. 43). Specifically, because the legal issues in this matter are not complex, because Plaintiff has shown

himself capable of presenting his case insomuch as he has ably presented his claims and filed numerous motions in this matter, and because expert testimony will not be required to determine whether Plaintiff is entitled to relief for the reasons expressed below, the appointment of counsel is unwarranted in this matter. *See, e.g., Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). This Court therefore upholds Judge Mannion's order denying Plaintiff the appointment of counsel (ECF No. 43), and denies Plaintiff's reasserted request for the appointment of counsel. (ECF Nos. 53-54, 63, 80-81).

In his most recent letters, Plaintiff also requests an additional extension of time within which to respond to the currently pending summary judgment motion. (ECF Nos. 80-81). Plaintiff's requests, however, were composed on December 7th and 10th, a week and more after the extension granted by Judge Mannion had elapsed. Pursuant to Local Civil Rule 6.1(a)(2), all requests for an extension of time must be submitted "prior to the expiration of the period sought to be extended." Where a request for an extension of time is submitted "after the time has expired," an extension request may only be made on a showing of both good cause for an extension and a showing that the party failed to make a timely request because of excusable neglect. Fed R. Civ. P. 6(b)(1)(B). Because Plaintiff filed these requests after his first extension of time had expired, and because Plaintiff has not explained why he could not have filed these same requests prior to the expiration of his first extension of time, this Court finds that he has not shown that his failure to file a timely extension request was the result of excusable neglect. Plaintiff's extension requests are therefore denied.

As Plaintiff has failed to respond to Defendants' motion in a timely fashion despite the extension he was granted, Plaintiff has failed to file a responsive statement of material facts in

5

dispute. Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where the moving party files a proper statement of material facts, as Defendants did in this matter, and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2-3 (D.N.J. Feb. 14, 2017). Although the Court shall consider Defendants' statement of material facts admitted for the purposes of deciding this motion, this Court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [Defendants] is entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* At 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

**2. Plaintiff's claims against the New Jersey Department of Corrections are barred by the Eleventh Amendment**

In addition to his § 1983 claims against Defendants Wasik and McGill, Plaintiff's operative amended complaint contains a state law negligence claim against the New Jersey Department of Corrections for its alleged failure to train the two officers. The "Eleventh Amendment prohibits private parties from bringing suits against states and state agencies [in federal court] absent their consent or Congressional abrogation." *Kreutzberger v. Pa. Dep't of Corr.*, 684 F. App'x 107, 108 (3d Cir. 2017) (citing *Judicial Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). This prohibition against suit in federal court "has long been interpreted to encompass cases involving a suit brought by a citizen against his own state" as well as suits by other United

6

States citizens or foreign nationals against a particular state. *Durham v. Dep't of Corr.*, 173 F. App'x 154, 156 (3d Cir. 2006) (citing *Kimel v. Fl. Bd. Of Regents*, 528 U.S. 62 (2000)). As the State of New Jersey has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see, e.g., Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) (citing *Ritchie v. Cahall*, 386 F. Supp. 1207, 1209-10 (D.N.J.), for the proposition that New Jersey did not waive its immunity from suit in federal court by enacting the New Jersey Tort Claims Act), both the state and its departments are immune from suits filed in federal court. As Plaintiff filed this matter in federal court, and as the Department of Corrections is immune from suit in federal court, his negligence claim against it is dismissed.

**3. Defendant Wasik is entitled to judgment on Plaintiff's failure to intervene claim**

Defendant Wasik argues that he is entitled to judgment on Plaintiff's claim that he failed to intervene to protect Plaintiff from McGill's actions. As the Third Circuit explained in *Smith v. Mensinger*, 293 F.3d 641, 650-52 (3d Cir. 2002), under the Eighth Amendment, a corrections "officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." Where such an officer refuses to intervene to end an unprovoked assault, he is liable under § 1983. *Id.* At 650. An officer can only be held liable for a failure to intervene, however, "if there is a realistic and reasonable opportunity" for him to intervene to end the use of force. *Id.* At 651; *see also Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012). As Plaintiff himself admitted during his deposition and as Defendants have highlighted in their unopposed statement of material facts, the shove allegedly committed by Defendant McGill was a "very fast occurring event" that rendered everyone in the

7

area "shocked." (Document 7 attached to ECF No. 76 at 3). The use of force also included only a single, unexpected shove that was over as soon as it occurred. Indeed, Plaintiff himself stated that he thought the claim "may not even . . . be appropriate" given the fast occurring nature of the event and the single shove he alleges occurred. Based on Plaintiff's own testimony at his deposition, it is clear that Wasik did not have a "realistic and reasonable opportunity" to intervene, and Wasik is therefore entitled to judgment as a matter of law. *Smith*, 293 F.3d at 650-52; *Bistrian*, 696 F.3d at 371.

**4. Defendant McGill is entitled to judgment on Plaintiff's excessive force claim**

Defendants also argue that McGill, and to the extent he is pled as an accomplice, Wasik, are entitled to judgment as to Plaintiff's excessive force claims. As the Third Circuit has explained, under the Eighth Amendment

> [t]he test for whether a claim of excessive force is constitutionally actionable is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319 [] (1986). The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.*; *see also Brooks* [*v. Kyler*], 204 F.3d [102, 106 (3d Cir. 2000)].

*Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). Defendants argue that Plaintiff admitted in his deposition that McGill did not act maliciously and sadistically to cause harm. By Plaintiff's own admission, "it wasn't [McGill's] idea [that he] want[ed] to hurt [Plaintiff]," (Document 7 attached to ECF No. 76 at 3), and the officers "weren't trying to get into a physical altercation"

8

with him at the time of the alleged shove. (*Id.* At 8). Instead Plaintiff opined that the officers merely intended to provoke him with insults while sending him back to his unit. (*Id.*). Thus, based on Plaintiff's own testimony, the officers did not act "maliciously and sadistically for the very purpose of causing harm," and thus lacked the requisite intent required to make out an Eighth Amendment claim for excessive force. *Giles*, 571 F.3d at 326; *see also Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Defendants are therefore entitled to judgment as to that claim as well.

### 5. **Plaintiff failed to exhaust his administrative remedies**

Although Defendants are entitled to judgment for the reasons expressed above, Defendants also argue that Plaintiff's complaint must be dismissed as he failed to exhaust his administrative remedies before filing his complaint. Pursuant to 42 U.S.C. § 1997e, a plaintiff who is an incarcerated prisoner at the time he files his complaint is required to exhaust all available administrative remedies before he may file a federal civil rights suit challenging "prison conditions." *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). A prisoner is required to meet this exhaustion requirement before filing suit "even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 734 (2001). Where an administrative procedure is available, a plaintiff seeking to challenge prison conditions via a federal civil rights action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust. *Ross v. Blake*, --- U.S. ---, ---, 136 S. Ct. 1850, 1856-57 (2016).

Because Plaintiff's § 1983 claims all concern matters of prison life, *see Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001); *see also Porter v. Nussle*, 534 U.S.

9

516, 532 (2002) (the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"), and because Plaintiff was a prisoner at the time he filed his complaint, this matter is subject to § 1997e's exhaustion requirement. *See, e.g., Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir 2001). As Plaintiff has not argued here that the administrative remedies provided by the prisons were unavailable or were otherwise incapable of being used, his claims would need to be dismissed unless he properly exhausted them prior to filing this matter. *Ross*, 136 S. Ct. at 1859-61. That Plaintiff was transferred out of the prison where the incident occurred does not relieve him of his exhaustion obligations. *See Jackson v. Grundy*, 877 F. Supp. 2d 159, 176-77 (D.N.J. 2012); *see also Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005); *Napier v. Laurel Cnty., Ky*, 636 F.3d 218, 223 (6th Cir. 2011) ("[g]enerally, the transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for the purposes of exhaustion").

As this Court recently explained,

> "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. A prisoner therefore properly exhausts his administrative remedies only by seeking all available administrative remedies while at least substantially complying with the rules and regulations of the applicable administrative body, in this case the state prison system. *Id.* at 90-103; *Small*, 728 F.3d at 272 (completion of the administrative review process "means 'substantial' compliance with the prison's grievance procedures"). In determining whether a prisoner has successfully exhausted, a court must look to the grievance regime of the prison facility to determine what steps are required to fully exhaust, and compliance with those procedures is all that is required to properly exhaust a claim. *See Jones v.* Bock, 549 U.S. 199, 218 (2007). Because exhaustion is a threshold issue

> affecting a plaintiff's entitlement to relief, it is the Court, and not a jury, that determines whether a given plaintiff has properly exhausted his claims, even to the extent of resolving any factual disputes related to the exhaustion issue. *Small*, 728 F.3d at 269-71.
>
> New Jersey's "Inmate Remedy System is a comprehensive system that includes the opportunity for an inmate to submit an 'Inmate Inquiry Form' or 'Inmate Grievance Form' and, in response to the resulting decision or finding, to submit an 'Administrative Appeal.'" N.J. Admin Code § 10A:1-4.4(c) (2018). Exhaustion of administrative remedies therefore requires that a prisoner both submit an inquiry or grievance form, and an administrative appeal of any adverse decision on the inquiry or grievance form. § 10A:1-4.4(d). These remedy forms "must be complete, legible, and include a clear and concise statement" of the prisoner's claim, and "shall contain the full name, [inmate] number and, when required, signature of the inmate submitting the form." § 10A:1-4.4(e). Upon the filing of an inquiry or grievance form, a prisoner will receive a response within fifteen or thirty days respectively as to the two types of forms, unless the coordinator of the prison's grievance system determines more time is needed, in which case the prisoner shall be informed of the need for more time. § 10A:1-4.4(i), 4.5(d). Upon receiving a final response to the form, Petitioner may file his administrative appeal, within ten calendar days, at which point he will receive a final decision on his appeal within ten further calendar days. § 10A:1-4.6.

*Campbell v. Doe*, No. 12-2750, 2018 WL 4616068, at *3 (D.N.J. Sept. 26, 2018).

As Defendants state in their unopposed statement of material facts, which this Court deems admitted for the purposes of this motion insomuch as Plaintiff failed to file a responsive statement of disputed facts, Plaintiff properly submitted only two remedy forms at Northern State Prison between June 6, 2014, when the shoving incident allegedly occurred, and September 2014, when this matter was initially filed. (Document 2 attached to ECF No. 76 at 7). Neither of those two properly filed inmate remedy forms are related to the alleged shoving incident which occurred in this matter. (*Id.*). Based on these undisputed facts, Plaintiff never properly submitted a remedy form concerning this incident prior to filing suit, nor did he complete an appeal and fully exhaust

11

his claims prior to filing, and his complaint would also be subject to dismissal on that basis as well. *Id.*

**III. CONCLUSION**

For the reasons stated above, this Court denies Plaintiff's late requests for a second extension of time (ECF Nos. 80-81), upholds Judge Mannion's denial of Plaintiff's motion for the appointment of counsel (ECF No. 43), denies Plaintiff's renewed requests for the appointment of counsel (ECF Nos. 53-54, 63, 80-81), and grants Defendant's motion for summary judgment (ECF No. 76). Judgment is therefore entered in this matter in favor of Defendants. An appropriate order follows.

Dated: December 18, 2018  *s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge